**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| LISA S. FROST, as Next Friend | : | |
| of JAMES EDWARD FROST, | : | |
| JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 2:03-CV-233-RWS |
| | : | |
| BRUCE C. CANTRELL, | : | |
| TRI-MOUNT SERVICES, INC., | : | |
| H. L.WEBSTER, JOHN DOE, and | : | |
| JOHN DOE TWO, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

Now before the Court is Defendant Tri-Mount Services, Inc. and

Defendant H.L. Webster's Motion for Summary Judgment [58-1].  After

considering the entire record, the Court enters the following Order.

### Statement of Facts

This case arises out of the tragic and unfortunate death of Mr. James

Frost, Sr. from injuries sustained when he was either thrown from or struck by a

moving vehicle driven by Mr. Bruce Cantrell, a former Defendant in default and now deceased.   Specifically, Plaintiff, as next friend for Mr. Frost's sole surviving heir, alleges that Mr. Cantrell, who had a long history of driving under the influence, was the driver of a vehicle jointly owned by Defendants Tri-Mount Services, Inc. and H.L. Webster and entrusted to Mr. Cantrell.  Plaintiff further alleges that in the early morning hours of May 12, 2002, Mr. Frost, who was traveling by foot on a gravel road in White County, Georgia, was struck by Cantrell's vehicle, that Mr. Cantrell failed to stop his vehicle and provide assistance, and that as a result, Mr. Frost died from his injuries.  Mr. Cantrell would later plead <u>nolo contendere</u> to charges of misdemeanor vehicular homicide in the Superior Court of White County, Georgia.  Plaintiff now seeks recovery from Defendants Tri-Mount Services, Inc. and Webster jointly and severally on theories of negligent entrustment, <u>respondeat superior</u>, and under the family purpose doctrine.  Defendants have moved for summary judgment on each claim.

## Discussion

### I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall

be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Where the moving party makes such a showing, the burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine

3

when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

In determining a motion for summary judgment, the court may consider only that evidence which is capable of reduction to admissible form.  Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005).  In viewing that evidence, the court must draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

4

**II.  Proximate Cause**

Plaintiff alleges that Mr. Cantrell acted negligently or recklessly to cause

Mr. Frost's injury and death, (see Compl. ¶¶ 15-18, 31, 36), and asserts three

possible theories under which Defendants Tri-Mount and Webster may be held

liable either vicariously or directly based on Mr. Cantrell's actions.  First,

Plaintiff alleges that Defendants may be held liable under a theory of negligent

entrustment.  (See Compl. ¶¶ 39, 44.)  Under the theory of negligent

entrustment, a defendant may be held liable for the independent negligent act of

entrusting a vehicle to an incompetent driver when that negligence combines with

the negligence of the driver so as to be a concurrent, proximate cause of the

plaintiff's injuries.  See, e.g., Ridgeway v. Whisman, 435 S.E.2d 624, 626 (Ga.

Ct. App. 1993) ("The liability of the owner in a negligent entrustment action

does not result from imputing the negligence of the incompetent driver to the

owner, rather, '[n]egligent entrustment of a motor vehicle to an incompetent

driver is an independent wrongful act of the vehicle's owner which is a

concurrent, proximate cause of injury when it combines with the negligence of

the operator.' ") (alteration in original).  Second, Plaintiff alleges that Defendants

may be held liable under the family purpose doctrine.  (See Compl. ¶¶ 40, 45.)

Under the family purpose doctrine, the non-negligent owner of a vehicle which is maintained for the use and convenience of his or her family may, in certain instances, be held vicariously liable for the negligent acts of the driver of that vehicle.  See, e.g., Simmons v. Hill, 528 S.E.2d 557, 559 (Ga. Ct. App. 2000). Third, Plaintiff alleges that Defendants are vicariously liable under the doctrine of respondeat superior.  (See Compl. ¶¶ 41, 46.)  Under the principle of respondeat superior, an employer may be held liable for negligent or intentional torts committed by an employee in furtherance of and within the scope of the employer's business.  See, e.g., Piedmont Hosp., Inc. v. Palladino, 580 S.E.2d 215, 216 (Ga. 2003); O.C.G.A. § 51-2-2 ("Every person shall be liable for torts committed by his . . .  servant by his command . . . and within the scope of his business, whether the same are committed by negligence or voluntarily.").

In order to recover from Defendants under any of the above theories, however, Plaintiff must prove through admissible evidence that Mr. Cantrell acted negligently, recklessly, or intentionally to cause the injury and death of Mr. Frost.  See Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 528 S.E.2d 508, 510 (Ga. 2003) ("[W]here the liability of the [employer] to an injured third person is purely derivative and dependent entirely upon the doctrine

AO 72A
(Rev.8/82)

of <u>respondeat superior</u>, a judgment on the merits in favor of the [employee] and against the third person is <u>res judicata</u> in favor of the [employer] in a suit by such third person. . . .") (quoting <u>Gilmer v. Porterfield</u>, 212 S.E.2d 842 (Ga. 1975)); <u>Tuggle v. Helms</u>, 499 S.E.2d 365, 369 (Ga. Ct. App. 1998) (noting that where a plaintiff's action against the owner of a vehicle is predicated upon the family purpose doctrine, and therefore purely derivative in nature, the failure to establish negligence on the part of the driver precludes recovery against the owner); <u>Schofield v. Hertz Corp.</u>, 412 S.E.2d 853, 856 (Ga. Ct. App. 1991) ("Unless the plaintiff can prove that the driver of the automobile was negligent, the entrustor's [negligence] is of no consequence.").  Thus, in the absence of proof that Mr. Cantrell was at least negligent in causing the injuries and death of Mr. Frost, Defendants are entitled to judgment as a matter of law.

### A.  Available evidence of proximate cause

The body of potentially relevant and admissible evidence which tends to establish that Mr. Cantrell did, or did not, act negligently, recklessly, or intentionally to cause the injury and death of Mr. Frost is extremely limited.  The parties point to no physical evidence which would shed light on the events surrounding Mr. Frost's death.  Moreover, it appears that only three people had

AO 72A
(Rev.8/82)

actual knowledge about what transpired in the early morning hours of May 12,
2002--the decedent, Mr. Frost; Mr. Cantrell; and Mr. Shirley, a passenger in the
vehicle during the relevant time period.  Mr. Frost was found dead and thus
made no statements regarding the cause of his injuries; Mr. Shirley's
whereabouts are unknown and he has not been deposed in this action.  Thus,
the only evidence available to establish the cause of Mr. Frost's death, and Mr.
Cantrell's involvement in it, must come from Mr. Cantrell himself.

On March 18, 2004, Mr. Cantrell entered a plea of nolo contendere to
charges of misdemeanor vehicular homicide in the Superior Court of White
County, Georgia.  In attempting to convince a court reluctant to accept a plea of
nolo contendere, counsel for Mr. Cantrell offered the following version of
events:

> [M]y client was invited to a birthday party down on the river.
> Upon arriving at the river he was confronted by a man that he did not
> know and had never met  who attempted to start a fight with him.  At
> that time my client, instead of fighting with this man, left, even though
> he was encouraged to stay at the birthday party.
>
> He then left the scene and on his way out of the scene of the
> party he began to hear a loud noise on the back of his truck.
> Someone was beating on the back of his truck.  He slowed the vehicle
> down, and in the process of slowing the vehicle down, the deceased
> in this case attempted to get into the door of his vehicle through the

8

window and partially open door, and grabbed a hold of the steering wheel while the vehicle was in motion.  And it was all Mr. Cantrell could do to keep from being dragged from the vehicle by the deceased, who he never knew, had no reason to have any difficulties with.  And as a result of that, he could never get away from the deceased and he drove out of a one-lane dirt road on a drizzly, dark, dreary, rainy night in the process of attempting to get away.   The deceased sustained injuries from which he died.

Mr. Cantrell, later on in the day, went by the Sheriff's Department to talk with the Sheriff.  And the result of all of that was he asked me to get involved with him.

And what I'm saying to the Court is, Judge, that we would earnestly asked the Court under that set of facts, which is not disputed by the State as we understand it because of all of the preliminary hearings we've had, consider a [plea of] nolo contendere in the case.

(Pl.'s Resp. to Mot. for Summ. J. Ex. G [71-5] at 6-8.)  When asked on two separate occasions if the facts as stated by his attorney were true and correct, Mr. Cantrell unequivocally stated that they were.  (Id. at 14.)

On October 8, 2004, Mr. Cantrell was deposed in this case.  During that deposition, Mr. Cantrell offered testimony regarding his involvement in the death of Mr. Frost which stands in stark contrast to the version of events offered during his plea hearing.  When questioned by Plaintiff's counsel, Mr. Cantrell offered the following deposition testimony:

9

QUESTION:    On the night of the incident of May 12th, 2002, were you driving a truck that was owned by Tri-Mount that injured James Frost, Sr.?

ANSWER:    On the night of--that you're questioning me about it was proven by the court in White County that it was not my truck that injured James Frost.

QUESTION:    Tell me what you mean by that?

ANSWER:    You'll have to check the court records.  I mean I'm not going to say anything about that.

QUESTION:    Okay.

ANSWER:    I was not driving the truck, no.

(Defs.' Mot. for Summ. J. [58-1] Ex. A at 41.)  During the same deposition, when questioned by counsel for Defendants about the same events, Mr. Cantrell gave the following testimony:

QUESTION:    [At the point you left your job site] about 10:00 [PM] where did you go?

ANSWER:    Had went to the river.  I'd had two telephone calls from Ashley Stephens, a friend of mine.  She was going to a birthday party on the river.

QUESTION:    There was a group of folks just hanging out having a birthday party beside the river?

ANSWER:    Yes.

10

. . .

QUESTION:      Did you go to that party?

ANSWER:      Yes, I did.

QUESTION:      Okay.  How long were you there?

ANSWER:      30 minutes --

QUESTION:      Okay.

ANSWER      -- if that long.

QUESTION:      . . . Did you have anything to drink?

ANSWER:      No, sir, I didn't.

. . .

QUESTION:      . . . And you left from that party and where did you go?

ANSWER:      I went back home.

QUESTION:      Okay.  And when did this incident occur during this sequence of events?

ANSWER:      I have no idea.

QUESTION:      Okay.

ANSWER:      When did it happen?  I don't know.

. . .

AO 72A
(Rev.8/82)

QUESTION:    Okay. But as we sit here today you don't believe that you in any way contributed to [Mr. Frost's] death, is that fair?

ANSWER:    I don't think so, no.

. . .

QUESTION:    So what you're saying today is that it was just an ordinary normal trip home, nothing happened out of the ordinary?

ANSWER:    To the best of my knowledge.

QUESTION:    You never came across someone--came across a stranger on the road?

ANSWER:    Uh-huh.

QUESTION:    Never saw someone that you've come to learn later was Mr. Frost?

ANSWER:    Uh-huh.

QUESTION:    As far as you know, you didn't pass someone that was injured on the --

ANSWER:    Didn't pass Mr. Frost, no, I did not.

QUESTION:    You just went home and --

ANSWER:    Went home and was told something had happened on the river and went the following day to the sheriff's office, walked in, wanted to speak with them, was told at that time they didn't need

12

> to see me after questioning three other people that
> was on the river, and went home.

(Id. at 52-55.)

It appears difficult, if not impossible, to reconcile these two versions of events.  In an ideal world, Plaintiff would be able to place Mr. Cantrell on the witness stand and subject him to examination on his involvement in Mr. Frost's death.  Unfortunately, we do not live in an ideal world.  Since being deposed in this action, Mr. Cantrell passed away.  (Defs.' Reply in Supp. of Mot. for Summ. J. [74] at 2.)  No other evidence is available.  Thus, the only potential evidence with respect to Mr. Cantrell's involvement in Mr. Frost's death consists of these two facially contradictory renditions of the facts.

Although state law controls the substantive issues in a diversity action, the admissibility of evidence in federal courts is governed by federal law.  Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1159 (11th Cir. 2004).   In this regard, Defendants contend that they are entitled to judgment as a matter of law because there is no admissible evidence that Mr. Cantrell was negligent or in any way responsible for Mr. Frost's death.  First, Defendants argue that under Georgia law, a criminal conviction is inadmissible in a civil action to establish the

13

truth of the facts upon which it was rendered. (Defs.' Brief in Supp. of Mot. for

Summ. J. [58-3] at 12-13.)  Second, Defendants argue that any statements made

or adopted by Mr. Cantrell in connection with his plea are inadmissible as

substantive evidence of fault under either Federal Rule of Evidence 613 or 801.

(Defs.' Reply in Supp. of Mot. for Summ. J. [74] at 1-4.)

     In response, Plaintiff, without citation to any Federal Rule of Evidence,

implores the Court to consider the statements of Mr. Cantrell in finding the

existence of a genuine issue of material fact.  First, Plaintiff argues that "[t]he

story that Cantrell adopted as his story to obtain his plea creates a genuine issue

of material fact whether the Court accepts the plea or the underlying testimony

as evidence or as impeachment of Cantrell's deposition testimony."  (Pl.'s

Resp. to Mot. for Summ. J. [71-1] at 22.)  Second, Plaintiff contends that

consideration of the plea in this case is permissible under Georgia law because

Mr. Cantrell is in default and deceased, and as such, the plea is not being used

"against the defendant" within the meaning of O.C.G.A. § 17-7-95.  (Id. at 22-

24.)

     Without question, there are significant issues regarding the admissibility of

Mr. Cantrell's conflicting statements under the Federal Rules of Evidence.   For

example, Rule 410--the effect of which has not been addressed by either party--generally operates to exclude either a plea of <u>nolo contendere</u> or any statements made in the course of plea proceedings in a subsequent civil or criminal case against the defendant who made the plea or participated in the plea discussions. FED. R. EVID. 410(2)-(3) (making inadmissible both "a plea of nolo contendere" as well as "any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure <u>or comparable state procedure</u>" regarding such a plea) (emphasis added).  Moreover, there are questions as to whether, in light of Mr. Cantrell's unavailability, extrinsic evidence of the plea proceeding statements is admissible for impeachment purposes under Rule 613, <u>see</u> FED. R. EVID. 613(b) ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."), and even if they are admissible under this Rule, whether they are admissible as substantive evidence.  <u>See</u> <u>Wilson v. City of Aliceville</u>, 779 F.2d 631, 636 (11th Cir. 1986) (evidence admitted under Rule 613 may not be considered as substantive evidence).  Additionally, there is the question of whether the

statements are admissible as a prior statement of a witness under Rule 801.  See

FED. R. EVID. 801(d)(1)(A) ("A statement is not hearsay if . . . [t]he declarant

testifies at the trial or hearing and is subject to cross-examination concerning the

statement, and the statement is . . . inconsistent with the declarant's testimony,

and was given under oath subject to the penalty of perjury at a trial, hearing, or

other proceeding, or in a deposition. . . .").  Finally, there is the question of

whether the statements qualify for admission under the residual hearsay

exception of Rule 807.  See FED. R. EVID. 807 (allowing for the admission of

hearsay statements not specifically covered by other Rules, "but having

equivalent circumstantial guarantees of trustworthiness," if the court determines

that the statements are material, more probative on the point than any other

evidence reasonably obtainable, the admission of the statements is consistent

with both the purposes of the Federal Rules of Evidence and the interests of

justice, and the opposing party is provided notice sufficiently in advance of

trial).

   But, the Court need not resolve each of these issues here because, even

assuming that Mr. Cantrell's plea proceeding statements are admissible, those

statements are insufficient to create a genuine issue of material fact.  As

16

discussed above, Plaintiff contends that two pieces of evidence establish a genuine issue of fact for trial: first, there are Mr. Cantrell's plea proceeding statements, and second, there is Mr. Cantrell's plea of nolo contendere.  The Court addresses the sufficiency of each in turn.

With respect to Plaintiff's first contention--that "[t]he story that Cantrell adopted as his story to obtain his plea creates a genuine issue of material fact whether the Court accepts the plea or the underlying testimony as evidence or as impeachment of Cantrell's deposition testimony"--the Court must conclude that the plea proceeding statements, viewed in a light most favorable to Plaintiff, fail to show the existence of a genuine issue of material fact.  Even disregarding Mr. Cantrell's contradictory deposition testimony and assuming the plea proceeding statements truly and accurately describe the events surrounding Mr. Frost's death, no reasonable juror could conclude, on the basis of those statements, that Mr. Cantrell acted negligently or otherwise to cause Mr. Frost's death.  The Court recognizes that except in plain and indisputable cases, questions of negligence, diligence, contributory negligence, and proximate cause are generally questions for the jury.  Ridgeway, 435 S.E.2d at 627; Taylor v. McClendon, 422

17

S.E.2d 440,  442 (Ga. Ct. App. 1992).  But, on the facts presented here, the

Court must conclude that this is such a plain and indisputable case.

Mr. Cantrell's plea proceeding statements show that Mr. Frost climbed

atop of Mr. Cantrell's moving vehicle, opened or attempted to open the driver

side door, grabbed the steering wheel through either the partially open door or

the driver's side window, and attempted to enter and take control of the vehicle

while it was in motion.  Mr. Frost's actions caused the vehicle to swerve out of

its lane and, in the process, he was thrown from the vehicle and sustained

injuries from which he later died.  This evidence is unrebutted.

Rather than constituting evidence of Mr. Cantrell's negligence, as Plaintiff

contends, Mr. Cantrell's plea proceeding statements can only establish that the

comparatively negligent, if not reckless, actions of the victim were the proximate

cause his injuries and death.  See O.C.G.A. § 40-6-242(b) ("No passenger in a

vehicle shall ride in such position or commit any act as to interfere with the

driver's view ahead or to the sides or to interfere with his control over the

driving mechanism of the vehicle.") (emphasis added); Ridgeway, 435 S.E.2d at

626 (stating that "at all times a plaintiff must use ordinary care for his own

safety, and must not, by his own negligence, be the sole proximate cause of his

18

own injuries" and reversing denial of summary judgment in defendant's favor on

negligent entrustment claim where voluntarily intoxicated driver's negligence was

proximate cause of plaintiff's injuries); c.f. Staats by Staats v. Lawrence, 576

A.2d 663, 667 (Del. Super. Ct. 1990) (granting summary judgment in favor of

defendant on grounds that individual who climbed on top of moving vehicle was

contributorily negligent as a matter of law).  Moreover, even inferring some

negligence on the part of Mr. Cantrell in leaving the scene without stopping to

render assistance, the Court concludes that Mr. Frost's negligence in climbing

onto a moving vehicle, attempting to take control of that vehicle by grabbing the

steering wheel, and forcing the vehicle out of the roadway, exceeds that of Mr.

Cantrell as a matter of law.

Applying Georgia's law of comparative negligence, Mr. Frost would be

precluded from recovering for his injuries because his negligence exceeds that

of Mr. Cantrell.  See, e.g., O.C.G.A. § 51-11-7 ("If the plaintiff by ordinary care

could have avoided the consequences to himself caused by the defendant's

negligence, he is not entitled to recover."); Bridges Farms, Inc. v. Blue, 480

S.E.2d 598, 599 (Ga. 1997) ("The negligent defendant's liability for damages is

dependent upon the extent of the negligence of the plaintiff.  If the negligence of

the plaintiff equals or exceeds that of the defendant, the defendant is not liable to that negligent plaintiff.").  Because "a suit for wrongful death . . . is derivative to the decedent's right of action[, a] survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in his or her own right."  Mowell v. Marks, 603 S.E.2d 702, 704 (Ga. Ct. App. 2004) (internal quotations omitted).  Therefore, because Mr. Frost could not recover in his own right, Plaintiff, as his survivor, is likewise precluded from recovery.

For clarity, the Court notes that while it is bound to draw all inferences in favor of Plaintiff as the nonmoving party, it may only draw those inferences which are reasonable.  To be sure, significant questions remain about the circumstances of Mr. Frost's death.  But, "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."  Willingham v. Hudson, 617 S.E.2d 192, 198 (Ga. Ct. App. 2005) (quoting Heath v. Rush, 578 S.E.2d 564, 565 (Ga. Ct. App. 2003)).  Thus, the Court is not permitted to infer from either the plea proceeding statements or the contradictory deposition testimony, as Plaintiff seems to request, that either Mr. Frost or Mr. Cantrell acted in a manner different from that to which he testified, that something more occurred, or to

20

engage in speculation as to what that something might have been.  As such, Mr.

Cantrell's plea proceeding statements are insufficient to create a genuine issue of

material fact for trial.

The Court turns now to Plaintiff's second contention--that Mr. Cantrell's

plea of nolo contendere somehow establishes a genuine issue of fact for trial.  It

has long been the rule in Georgia that a plea of nolo contendere may not serve

as substantive evidence of fault because it is not an admission of guilt.  See,

e.g., O.C.G.A. § 17-7-95 ("Except as otherwise provided by law, a plea of nolo

contendere shall not be used against the defendant in any other court or

proceedings as an admission of guilt or otherwise or for any purpose");

Waszczak v. City of Warner Robins, 471 S.E.2d 572, 574 (Ga. Ct. App. 1996)

("[E]vidence of a nolo contendere plea to a traffic citation is inadmissible since

it is not an admission of guilt.").  Applying this rule, the fact that Mr. Cantrell

entered a plea of nolo contendere to charges of misdemeanor vehicular

homicide arising out of the death of the victim in no way establishes that Mr.

Cantrell acted negligently or otherwise to cause Mr. Frost's death.  Therefore,

Mr. Cantrell's plea of nolo contendere cannot, as a matter of law, establish that

he acted negligently to cause the victim's death.  For the reasons set forth above, Plaintiff's claims must fail.

Without question, Mr. Frost's death was tragic and the Court views Plaintiff, as his survivor, with great sympathy.  But, tragedy does not, in and of itself, equate to liability under the law.  Applying the law and viewing, as it must, the evidence in a light most favorable to Plaintiff as the nonmoving party, the Court concludes that, as a matter of law, Plaintiff cannot establish that Mr. Cantrell's actions were the proximate cause of Mr. Frost's death.  Therefore, no genuine issue of material fact exists with respect to Plaintiff's claims premised upon negligent entrustment, respondeat superior, and the family purpose doctrine.  See, e.g., Hedquist, 528 S.E.2d at 510; Tuggle, 499 S.E.2d at 369; Schofield, 412 S.E.2d at 856.  As such, Defendants are entitled to summary judgment.

## Conclusion

Defendant Tri-Mount Services, Inc. and Defendant H.L. Webster's Motion for Summary Judgment [58-1] is hereby **GRANTED**.

22

**SO ORDERED** this   7th   day of February, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

23